IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    )
    )
    )   Criminal Action
     vs.    )   No. 12-cr-00566
    )
MELVIN SANTIAGO,    )
  also known as "YoYo" (-01);   )
RAMON REYES,    )
  also known as "Bash" (-02);   )
MIGUEL ANGEL SOTO-PEREZ,    )
  also known as "Suzuki" (-03);   )
LUIS MONROIG-GONZALEZ,    )
  also known as "Luiscito" (-04);  )
OSWALDO GONZALEZ,    )
  also known as "Gordo" (-05);   )
LUIS ANTHONY MENDOZA,    )
  also known as "Domi" (-06);   )
JEAN ALBERT PONS-LUGO,    )
 also known as "Yan" (-08),   )

*    *    *

APPEARANCES

    SHERRI A. STEPHAN, ESQUIRE
        Assistant United States Attorney
        On behalf of the government

    ROBERT E. GOLDMAN, ESQUIRE
        On behalf of defendant Melvin Santiago

    BENJAMIN B. COOPER, ESQUIRE
        Assistant Federal Defender
        On behalf of defendant Ramon Reyes

    MARC S. FISHER, ESQUIRE
        On behalf of defendant Migual Angel Soto-Perez

    GLENNIS L. CLARK, ESQUIRE
        On behalf of defendant Luis Monroig-Gonzalez

    CARLOS A. MARTIR, ESQUIRE
        On behalf of defendant Oswaldo Gonzalez

MICHAEL P. GOTTLIEB, ESQUIRE
    On behalf of defendant Luis Anthony Mendoza

ROBERT C. PATTERSON, ESQUIRE
    On behalf of defendant Jean Albert Pons-Lugo

*    *    *

## O P I N I O N

JAMES KNOLL GARDNER
United States District Judge

### INTRODUCTION

This criminal action involves a cocaine-trafficking business which is alleged to have been led by defendant Melvin Santiago and operated between March 2012 and August 2012, principally in the Allentown, Pennsylvania area, but with ties to Puerto Rico, and with the assistance and involvement of Mr. Santiago's seven co-defendants.

This matter is before the court on Defendant Santiago's Motion to Compel the Government to Provide English Language Transcripts of Pertinent Foreign Language Recordings, which motion was filed by defendant Santiago on February 19, 2013 ("Motion to Compel Transcripts" or "Motion").[1]  On March 8, 2013 a pretrial motion hearing was

---

[1]    The within motion was filed together with Defendant Santiago's Memorandum in Support of His Motion to Compel the Government to Provide English Language Transcripts of Pertinent Foreign Language Recordings ("Defendant's Memorandum").

(Footnote 1 continued):

held before me concerning the Motion to Compel Transcripts.

Counsel for each of defendant Santiago's co-defendants

joins in the within Motion to Compel Transcripts.[2]

### SUMMARY OF DECISION

For the reasons expressed below, the Motion to

Compel Transcripts is granted, in part, and denied, in

part.

Specifically, the Motion to Compel Transcripts is

granted to the extent that defendant Santiago seeks an

Order requiring the government to produce English-language

transcripts of the 1,329 electronically-recorded

intercepted communications that the government has

designated as, and represented to the court to be,

pertinent to the charges against these defendants.

---

(Continuation of footnote 1):

On February 25, 2013 the Government's Reply to Defendant's Motion to Compel Production of Transcriptions of Wire and Electronic Communications ("Government's Reply") was filed, together with Exhibit A to the Government's Reply -- a selection of 22 written English-language summaries of pertinent calls prepared by government linguists who monitored the wire and electronic intercepts in the within matter.

[2]     Motion to Compel Transcripts at ¶ 21. Each defense counsel for defendants Ramon Reyes, Miguel Angel Soto-Perez, Luis Monroig Gonzalez, Oswaldo Gonzalez, Luis Anthony Mendoza, and Jean Albert Pons-Lugo confirmed on the record at the March 8, 2013 pretrial motion hearing that he and his client joined in the motion and argument advanced by counsel for defendant Melvin Santiago. As of the date of this Opinion, co-defendant Juan Mangual is a fugitive who has neither been arrested or arraigned, and for whom no counsel has entered an appearance.

However, I deny the Motion to the extent that it seeks to require the government to bear the full cost of providing English-language transcripts of electronically recorded conversations which the government does not introduce into evidence, or otherwise rely upon, at trial, or during sentencing if any defendant is convicted.

## PROCEDURAL HISTORY

On October 4, 2012 the government filed a 21-count Indictment charging the eight co-defendants with, among other things, Conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846.[3]  Co-defendants Melvin Santiago and Ramon Reyes also face weapons-possession charges related to the alleged drug-trafficking activity.[4]

On December 13, 2012 the government filed a motion seeking to have this case declared complex for purposes of the federal Speedy Trial Act, 18 U.S.C. § 3161. The motion was unopposed by defendants.

---

[3]      Indictment, Count One.

[4]      Defendant Melvin Santiago was charged in Count Nineteen of the Indictment with Possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1).  Co-defendant Ramon Reyes was charged with the same offense in Count Twenty.  In Count Twenty-One, defendant Reyes was charged with Felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

On February 7, 2013, I held a conference to address the complex-case motion, a trial attachment date, and appropriate pretrial deadlines.

Based upon my findings of fact entered orally on the record at the February 7, 2013 status conference, and memorialized by my Order dated March 20, 2013 and filed March 22, 2013, I declared this case complex for purposes of the federal Speedy Trial Act. A key factor in my decision to declare this case complex was the nature and volume of the discovery anticipated.

A dispute arose at the status conference between government and defense counsel concerning transcription of 1,329 electronically-recorded Spanish-language conversations intercepted by the government during its investigation.

The need to resolve that dispute prevented the court and the parties from proceeding, at the February 7, 2013 status conference, with a meaningful discussion of how long the parties would reasonably require to complete discovery.

Accordingly, by agreement of counsel at the status conference, I gave defendants until February 19, 2013 to file a motion seeking to compel the government to provide English-language transcripts of the 1,329 inter-

cepted conversations pertinent to this case; gave the government until February 26, 2013 to respond to any motion to compel transcripts; and scheduled a pretrial motion hearing for March 8, 2013.  On February 19, 2013 defendant Melvin Santiago filed the within motion to compel, in which all six other arraigned co-defendants joined.  On February 25, 2013 the government filed its reply.

Neither party presented any witnesses at the pretrial motion hearing held March 8, 2013.  The government relied upon Exhibit A attached to its reply and did not introduce additional material into evidence. Defendants introduced three exhibits.[5]  Counsel for defendant Santiago and government counsel each made a closing argument.

At the conclusion of the hearing, I took the Motion to Compel Transcripts under advisement.  Hence this Opinion.

<u>CONTENTIONS OF THE PARTIES</u>

Regarding the Motion to Compel Transcripts, defendants argue that the court should exercise its inherent authority to supervise discovery in a criminal case and should, pursuant to that authority, compel the government to provide verbatim English-language transcripts

---

[5]    <u>See</u> footnote 1 to the Order accompanying this Opinion for a description of Exhibit A to the government's reply and the three exhibits introduced by defendants at the March 8, 2013 pretrial motion hearing.

of the 1,329 Spanish-language intercepted conversations

which the government deemed pertinent to the drug-

trafficking and weapons offenses charged in the Indictment.[6]

In its written response, the government asserts

that neither Rule 16 of the Federal Rules of Criminal

Procedure, nor Brady[7] and its progeny, require the

government to provide what is sought in the Motion to

Compel Transcripts.  However, during the March 8, 2013

pretrial motion hearing, counsel for defendant Santiago

conceded that assertion, and government counsel acknowl-

edged that, although Rule 16 and Brady do not mandate the

relief requested by the within motion, the court possesses

the authority to direct the relief sought in the Motion to

Compel Transcripts.

Nevertheless, government counsel argued that the

court should decline to exercise that discretionary

authority here because the government has already provided

each of the seven arraigned defendants with (a) audio

---

[6]        Paragraph 4 of the Affidavit to the Criminal Complaint
states, "To date, law enforcement officers have intercepted over 1329
calls pertinent to SANTIAGO's illegal activities and those of his
associates involving primarily drug trafficking activities."  See
paragraph 4 of Affidavit of Special Agent Anthony V. Cavallo, Federal
Bureau of Investigation, dated August 10, 2012, attached to the
Criminal Complaint dated August 10, 2012 and filed August 28, 2012
(Document 23), which is part of Defense Exhibit Santiago D-1, marked
and identified at the March 8, 2013 pretrial motion hearing.

[7]        Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,
10 L.Ed.2d 215 (1963).

copies of the 1,329 pertinent Spanish-language calls; and
(b) electronic copies of English-language written summaries
created by government linguists of all 1,329 pertinent
calls; and has agreed to provide each defendant with
(c) electronic copies of English-language verbatim
transcripts of the approximately 200 pertinent calls which
the government intends to offer at trial.

In short, the parties agree that I must determine
whether or not, and how, to exercise my discretionary
authority to manage discovery in this complex criminal
case.

THE RECORDINGS

During the investigation in this case, the
government conducted a court-approved wiretap during which
the government intercepted and recorded 1,329 Spanish-
language telephone calls between defendant Melvin Santiago
and others, including his co-defendants, which government
linguists designated as, and the government has represented
to the court to be, pertinent to the charged conduct in
this case. Those intercepted communications are the
subject of the within Motion to Compel Transcripts.

During the March 8, 2013 pretrial motion hearing,
government counsel advised the court that although calls
deemed pertinent by the government's linguists were

recorded in full, the monitoring and recording of an intercepted communication were terminated as soon as the government's linguists deemed that particular call to be non-pertinent (in other words, unrelated to defendant Santiago's alleged cocaine-trafficking business).

Government counsel referred to these non-pertinent communications as "fragments".  In other words, only a short initial fragment of the intercepted communication was recorded before it was deemed non-pertinent and the recording terminated.

As indicated above, government linguists identified 1,329 intercepted Spanish-language calls as pertinent to defendants' alleged cocaine-trafficking business.  The total number of communications intercepted during the government's investigation (pertinent and non-pertinent) was not provided by the government.  However, in response to a question from the court during the March 8, 2013 hearing, government counsel estimated the number of non-pertinent intercepted fragments to be "in the thousands".

In its reply to defendant Santiago's Motion to Compel Transcripts, the government states:

The government has provided discovery to defendant which include a digital video disc of approximately 1300 wire and electronic communications recorded in Spanish. The government is in the process of obtaining a digital video disc of English summaries made by government linguists who monitored the wire and electronic communications to provide to the defendants. The government will be requesting government's linguists [to] transcribe selected wire and electronic communications on a continuous basis; as accomplished[,] these transcriptions will be provided to defendants.[8]

During the March 8, 2013 hearing, government counsel stated that, as of that date, the government has obtained, and provided to defense counsel, transcripts of one dozen intercepted communications and that transcripts have been requested for several dozen additional intercepted communications.

Although government counsel did not know exactly how many communications had been transcribed as of the March 8, 2013 hearing, she represented to the court that "many, many" calls would ultimately be transcribed before the completion of this case. Government counsel further represented that, as of the March 8, 2013 hearing, the

---

[8]     Government's Reply at page 1. The second disc containing the linguists' English-language summaries of each of the 1,329 communications was provided to each defense counsel during the March 8, 2013 hearing. Carlos Martir, Esquire, counsel for defendant Oswaldo Gonzalez, departed the hearing before government counsel distributed the discs containing the linguists summaries. Government counsel represented to the court that a disc would be sent Attorney Martir promptly.

government contemplated using less than 200 calls at trial in this case.[9]

The government stated that it will request the transcription of those nearly 200 calls on a rolling basis leading up to, and perhaps during, trial. The government has stated that it will provide those transcripts to each defendant as soon as they are completed, but has not stated when that might be.

Defendant Santiago and his co-defendants, and all defense counsel, request in the within Motion to Compel Transcripts that the government be required to produce English-language transcripts of the 1,329 intercepted calls which the government identified as pertinent to the charged conduct.

<u>DISCUSSION</u>

Defendants and the government agree that no particular disposition of Defendant's Motion to Compel

---

[9]     Government counsel indicated that this 200-call limit was based upon a jury's potential willingness and ability to receive and digest transcripts of intercepted communications. The proffered estimate offered by government counsel was not intended, and has not been interpreted, as a binding commitment from the government that it would not seek to (1) introduce transcripts of more than 200 pertinent intercepted calls at trial, or (2) otherwise rely upon the existence, or content of, pertinent intercepted calls which are not transcribed.

Transcripts is demanded by <u>Brady</u> and its progeny,[10] or by

Rule 16 of the Federal Rules of Criminal Procedure.

Rather, the parties agree that the Motion to Compel

Transcripts is committed to the sound discretion of the

trial court.

The Local Criminal Rules for the United States

District Court for the Eastern District of Pennsylvania

expressly permit the court to provide the relief sought in

the Motion.  Specifically, Rule 41.1(c) governs the

transcription of intercepted communications and provides,

in pertinent part, that

> [i]n any case involving the interception of
> oral or wire communications, the Judge may
> by appropriate pretrial order require...

---

[10]    The parties' position in this regard is well-supported.
The United States Court of Appeals for the Third Circuit has stated
that "<u>Brady</u> and its progeny permit the government to make information
within its control available for inspection by the defense, and impose
no additional duty on the prosecution team members to ferret out any
potentially defense-favorable information from materials that are so
disclosed."  <u>United States v. Pellulo</u>, 399 F.3d 197, 212 (3d Cir. 2005)
(citing <u>United States v. Mmahat</u>, 106 F.3d 89, 94 (5th Cir. 1997)).  The
Third Circuit Appeals Court went on to state that its "jurisprudence
has made clear that <u>Brady</u> does not compel the government to furnish a
defendant with information which he already has or, with any reasonable
diligence, he can obtain himself."  <u>Pellulo</u>, 399 F.3d at 212 (internal
quotations omitted).

Here, defendants have access to both the Spanish-language
audio recordings of the intercepted calls and the English-language
written summaries of those calls which were prepared by the government
linguists monitoring the calls.

Neither defendant Santiago, nor the government, disputes
the fact that defendants here have access to the intercepted
communications and are each eligible under the Criminal Justice Act
("CJA") for their court-appointed counsel to obtain CJA funds to cover
reasonable transcription costs.  <u>See</u> 18 U.S.C. § 3006A(d)(1).

-12-

> (1) Disclosure to defense counsel within a
> reasonable time before trial of the original
> recordings of such oral or wire communi-
> cations <u>together with transcripts identi-
> fying the names of the persons who are
> speaking</u>.

E.D.Pa.Crim.R. 41.1(c)(1)(emphasis added).

In its written reply to the Motion to Compel Transcripts, the government relies upon <u>States v. Parks</u>, 100 F.3d 1300, (7th Cir. 1996), and <u>United States v. Zavala</u>, 839 F.2d 523 (9th Cir. 1988), to support its contention that <u>Brady</u> and Rule 16 do not require it to provide defendants with the requested English-language transcripts.[11]  Although defendants do not dispute that contention, a discussion of <u>Parks</u> and <u>Zavala</u> is warranted here.

Both <u>Parks</u> and <u>Zavala</u> support the government's position that <u>Brady</u> and its progeny do not require the government to provide transcripts of all intercepted conversations (both pertinent and non-pertinent), as well as the government's position that its <u>Brady</u> obligations are satisfied by making audio copies of all 1,329 pertinent conversations available to defendants.  <u>Parks</u>, 100 F.3d at 1305-1306; <u>Zavala</u>, 839 F.2d at 527-528.

---

[11]     Government's Reply at pages 1-2.

However, neither Parks, nor Zavala, hold that a
district court lacks the authority to require the
production of English-language transcripts of Spanish-
language recordings which the government has designated as
pertinent to drug-trafficking activity.  Indeed, the
government did not advance that argument in its written
reply to the Motion to Compel Transcripts, nor during the
March 8, 2013 pretrial motion hearing.

### United States v. Zavala

Despite the government's reliance, in its written
reply to the Motion, upon the Opinion of the United States
Court of Appeals for the Ninth Circuit in Zavala, that
Opinion provides substantial support for the proposition
that it is reasonable to require the government to provide
defendants with English-language transcripts of the 1,329
pertinent intercepted communications.

Zavala, like the within matter, involved an
alleged drug-distribution conspiracy.  There, the
government intercepted and recorded 11,000 Spanish-language
telephone conversations, and the government designated
1,800 of those 11,000 conversations as drug-related -- in
other words, Zavala involved 1,800 pertinent communi-
cations.  Zavala, 839 F.2d at 527.  The government provided
the defendants with audio recordings of all 11,000 inter-

cepted communications, as well as English-language tran-
scripts of the 1,800 recorded conversations which the
government had designated as drug-related.  Zavala,
839 F.2d at 527.

Mr. Zavala argued that the district court's
failure to order the government to provide English-language
transcripts of the 9,200 additional non-pertinent Spanish-
language conversations violated his due process and equal
protection rights.  Id.  The Ninth Circuit rejected
Mr. Zavala's argument on appeal and specifically stated
that "[t]he procedures used [by the district court] were
reasonable and fully respected [Mr. Zavala's]
constitutional rights.  Id. at 528.

Despite relying on Zavala in its written reply,
the government has not explained (either in its written
reply or during the March 8, 2013 hearing) why, or how, the
government's production, and distribution to the
defendants, of English-language transcripts of 1,800
Spanish-language intercepted communications was
"reasonable" in Zavala, but would somehow be unreasonable
in a this case, which involves 500 fewer (approximately
one-third) pertinent conversations.

Accordingly, I find that <u>Zavala</u> provides persuasive support for the relief requested in the Motion to Compel Transcripts.

<u>United States v. Parks</u>

The government also relies upon <u>United States v. Parks</u> in its written reply to the Motion to Compel Transcripts.[12]  <u>Parks</u> involved a drug-trafficking conspiracy by an organization known as the "Gangster Disciples".  In <u>Parks</u>, the government intercepted 65 hours of English-language conversations utilizing a small transmitter placed within a visitor's pass at an Illinois correctional facility.  <u>Parks</u>, 100 F.3d at 1302.  However, background noise combined with the slang English used by the speakers made the intercepted conversations somewhat difficult to understand.  <u>Id.</u>

In <u>Parks</u>, the government "determined that particular [portions] of conversations, adding up to four hours of playing time were relevant" to the charged conduct and "describe[d] the hierarchical structure of the Gangster Disciples, and include[d] discussions about narcotics trafficking, acts of violence, and efforts to thwart law enforcement."  <u>Id.</u>  The government voluntarily provided the defendants with multiple copies of the 65-hours of audio

---

[12]     Government's Reply at page 1.

recording, as well as a copy of the transcript of the four
hours of intercepted conversations which the government
contended were relevant and intended to introduce at trial.
Id.

After conducting an "audibility" hearing, the
district court in Parks concluded that the problem with the
tapes was "more from a translation problem and less
significantly...an audibility problem." Parks, 100 F.3d
at 1303. The district court, relying on Brady, issued an
order requiring the government to provide transcripts of
the entire 65 hours of recorded conversations, and
conditionally suppressed the four hours of allegedly-
relevant recorded conversations until the government
produced transcripts of the full 65 hours. Id.

On appeal in Parks, the United States Court of
Appeals for the Seventh Circuit held that the district
court's conditional suppression of the relevant four hours
of tape was error, and stated that

> [t]here is no requirement under Brady that
> the Government transcribe the entire sixty-
> five hours of the intercept, much of which
> contains irrelevant information.... There
> is no logical or practical reason to hold
> the Government's evidence hostage until the
> Government performs an act not required by
> law.... [T]he [district] court cannot
> require the government to meet a higher
> burden than is required by law.

<u>Parks</u>, 100 F.3d at 1308 (emphasis added).

As in <u>Zavala</u>, here the government similarly relies on <u>Parks</u> in its written reply to support the proposition that it is not required (by <u>Brady</u> or Rule 16 of the Federal Rules of Criminal Procedure) to provide defendants with English-language transcripts of the 1,329 Spanish-language intercepted communications in this case. However, at the March 8, 2013 hearing, government counsel did not elaborate on <u>Parks</u> or explain how, or why, <u>Parks</u> weighs against a decision by the court to exercise its discretion to order the requested transcripts.

Upon review of <u>Parks</u>, I conclude that it does not support the government's position that the court should decline to exercise it discretion and should deny the Motion to Compel Transcripts.

Specifically, <u>Parks</u> involved intercepted communications which were conducted in slang English, rather than a foreign language as here. More importantly, the government identified four of the 65 hours of total intercepted conversations as relevant to the charged conduct and provided the defendants with a transcript of the relevant portion of the intercepted communications. <u>Parks</u>, 100 F.3d at 1302-1303.

In other words, Parks did not involve a dispute arising from the government's refusal to provide English-language transcripts of foreign-language intercepted conversations. Rather, the United States Court of Appeals for the Seventh Circuit took issue with the district court's use of conditional suppression of the relevant four hours of intercepts as a mechanism to induce the government to provide transcripts of intercepted conversations which were not related or pertinent to the changed conduct. See Parks, 100 F.3d at 1308.

In the within Motion to Compel Transcripts, defendant Santiago does not seek to require the government to produce English-language transcripts of an unknown number of Spanish-language "fragment" recordings which government linguists deemed unrelated to defendant Santiago's alleged cocaine-distribution business. Rather, the within Motion seeks to require the government to produce English-language transcripts of the intercepted communications which government linguists designated as related to defendant Santiago's alleged cocaine-distribution business.

Although the units of measure differ between Parks and this case, the within Motion seeks to have the

government produce essentially the same type of material provided voluntarily by the government in <u>Parks</u>.

Specifically, <u>Parks</u> involved 65 total hours of intercepted communications. As indicated above, the total number of communications (pertinent communications, plus non-pertinent fragments) is unknown here.

In <u>Parks</u>, the government identified four hours of intercepted conversations as relevant to the defendants' charged conduct and voluntarily provided the defendants with a transcript of the relevant four hours. Here, government linguists monitoring the Title III wire interception deemed 1,329 intercepted conversations to be pertinent (related to defendant Santiago's alleged cocaine-distribution business), and the government has represented to the court that it possesses (and has provided to defendants) Spanish-language audio recordings of those 1,329 pertinent conversations.

However, unlike in <u>Parks</u>, the government here has not provided, and does not intend to provide, defendants with transcripts of all conversations which the government and its linguists deemed to be related to defendant Santiago's alleged cocaine-distribution business.

Accordingly, I find that <u>Parks</u> does not provide persuasive support for the government's contention that the

court should decline to exercise its discretion and should, instead, deny the within Motion to Compel Transcripts.

United States v. Warshak

At the March 8, 2013 pretrial motion hearing, government counsel offered an additional case, United States v. Warshak, 631 F.3d 266 (6th Cir. 2010), as support for its argument that it should not be required to provide English-language transcripts of all pertinent calls.

In Warshak, defendant Steven Warshak, his mother, and the company of which Mr. Warshak was CEO, were convicted by a jury of conspiracy to commit mail fraud, bank fraud, and money laundering, and were sentenced to prison and ordered to forfeit $500,000,000 in assets. Warshak, 631 F.3d at 276-281.

On appeal, the defendants in Warshak argued that "the district court erroneously permitted the government to produce titanic amounts of electronic discovery in formats that were simultaneously disorganized and unsearchable" and that "the government's failure to supplement the discovery materials with indices was prejudicial to the preparation of an adequate defense." Warshak, 631 F.3d at 295.

The United States Court of Appeals for the Sixth Circuit rejected those arguments and declined to find that the district court abused its discretion by declining to

-21-

(1) order the government to produce electronic discovery in a different, more user-friendly format; and (2) require the government to provide a supplemental index cataloging the voluminous discovery provided. Id. at 295-297. Moreover, the Warshak court held that the government had not violated Brady simply by turning over a vast amount of discovery material because there was no evidence suggesting that the government had intentionally "padded" the open, voluminous file with useless or misleading material. Warshak, 631 F.3d at 297-298.

In the case before this court, the essence of the government's Warshak argument at the March 8, 2013 hearing was that it had already complied with its discovery and Brady obligations by turning over complete Spanish-language audio copies of the 1,329 pertinent intercepted conversations, and an English-language summary of each of those conversations.[13]

Additionally, relying on Warshak, government counsel argued that neither Brady and its progeny, nor the

_____

[13]        See Government's Reply, Exhibit A.

        Government counsel represented at the February 7, 2013 status conference that each defendant had been provided with a disc containing the audio version of each of the 1,329 pertinent recorded conversations.  At the March 8, 2013 pretrial motion hearing, government counsel brought with her, and represented to the court that she was providing each defendant with, a disc containing the linguist's English-language written summary of each of the 1,329 pertinent conversations.

Federal Rules of Criminal Procedure, impose upon the government an affirmative obligation to sift through all 1,329 pertinent conversations in order to identify and highlight for defendants the location of potentially-exculpatory, or otherwise-defense-friendly, content in those conversations.

However, that argument misconstrues the request made in the within Motion to Compel Transcripts. Defendant Santiago is neither requesting that the government provide English-language summaries of the Spanish-language recorded conversations, nor requesting the original Spanish-language recorded conversations themselves. Nor is defendant Santiago requesting that government counsel direct him (or any other defendant) to potentially defense-friendly information contained in those recorded conversations.

Rather, defendant Santiago is requesting that the government be required to provide English-language transcripts of the 1,329 Spanish-language intercepted conversations which were identified as pertinent by government linguists so that he, together with his English-speaking counsel, can meaningfully review the fruits of the government's investigation, which have already been used

affirmatively[14] against him to obtain warrants and an

Indictment, and which may be used against him in the future

---

[14]     Defendant Santiago introduced three exhibits -- including Defense Exhibits Santiago D-1 and D-2 -- during the March 8, 2013 hearing as examples of the governments affirmative reliance upon the existence, and contends of, the 1,329 intercepted calls which government linguists deemed pertinent.

        Defense Exhibit Santiago D-1 is a copy of the Criminal Complaint filed in the within matter by the government on August 28, 2012 (Document 23), together with the Affidavit of Special Agent Anthony V. Cavallo of the Federal Bureau of Investigation, United States Department of Justice, which Affidavit was sworn before United States Magistrate Judge Arnold C. Rapoport on August 10, 2012 (Document 23).

        Defense Exhibit Santiago D-2 is a copy of the following documents:

        (A) Application and Affidavit for Search Warrant In the Matter of the Search of 307 South Franklin Street, Allentown, Pennsylvania, sworn to, and subscribed by, Evan Weaver, Task Force Officer of the Federal Bureau of Investigation, before Magistrate Judge Rapoport on August 10, 2012 ("Application and Affidavit");

        (B) Search Warrant In the Matter of the Search of 307 South Franklin Street, Allentown, Pennsylvania, issued by Magistrate Judge Rapoport on August 10, 2012; and

        (C) Attachments A and B to both the Application and Affidavit and the Search Warrant; and

        (D) Affidavit of Probable Cause sworn to, and subscribed by, Task Force Officer Evan Weaver before Magistrate Judge Rapoport on August 10, 2012.

        During the March 8, 2013 pretrial motion hearing, counsel for defendant Santiago referred to the affidavits of Special Agent Cavallo and Task Force Officer Weaver as examples of instances where the government affirmatively utilized the existence and substance of the 1,329 pertinent intercepted conversations in the prosecution of this case against the defendants. Counsel for defendant Santiago argued that these affirmative uses of the 1,329 pertinent intercepted calls by the government supports the within Motion to Compel Transcripts and warrants the court's exercise of its discretion to grant that motion.

        In response, government counsel argued that the affidavits of Special Agent Cavallo and Task Force Officer Weaver are not based upon the substance of the 1,329 intercepted calls themselves, but

(Footnote 14 continued):

during the trial in this matter, and at sentencing if he is convicted. Accordingly, I find that Warshak does not provide substantial support for the government's argument that I should decline to exercise my discretion to require the government to provide defendants with English-language transcripts of all pertinent calls in this case.

### United States v. Santos-Cruz

Moreover, I conclude that the Opinion of then District- and now Senior Circuit-Judge Franklin S. Van Antwerpen in United States v. Santos-Cruz provides

---

(Continuation of footnote 14):

rather, are based upon Agent Cavallo and Officer Weaver's respective reviews of the English-language written summaries created by the government linguist monitoring the wire. Government counsel further argued that because the affidavits were based upon Agent Cavallo and Officer Weaver's review of, and familiarity with, the linguists' written summaries and not the actual audio recordings, the government should not be required to provide English-language transcripts of Spanish-language audio recordings.

The government's response is undermined by the affidavits themselves. Agent Cavallo states that "[t]he statements contained in this affidavit are based upon my investigation, information provided to me by other FBI agents and law enforcement officers, wire and electronic interceptions from authorized Title III inteceptions." (Defense Exhibit Santiago D-1, Criminal Complaint, Affidavit of Special Agent Anthony V. Cavallo, at ¶ 3 (emphasis added).)

Similarly, Officer Weaver states that "[t]he information contained in this affidavit is based upon my personal observations, discussions with other law enforcement officers, consensual recordings, information from confidential informants, lab reports, pen register data, surveillance reports, public record information, and wire interceptions pursuant to Title III." (Defense Exhibit Santiago D-2, Affidavit of Probable Cause of Task Force Officer Evan Weaver, at ¶ 7 (emphasis added).) Officer Weaver also states that "law enforcement officers have intercepted over 1300 calls pertinent to SANTIAGO's illegal activities and those of his associates involving primarily drug dealing". (Id. at ¶ 12 (emphasis in orginal).)

persuasive support for defendant Santiago's contention that it would be appropriate and reasonable to require the government to provide transcripts of the calls which it previously deemed pertinent and has utilized in its prosecution of this case.  United States v. Santos-Cruz, 2000 U.S.Dist. LEXIS 3920, at *5-9 (E.D.Pa. March 16, 2000)(Van Antwerpen, J.).

The Santos-Cruz case involved an alleged conspiracy to distribute cocaine and heroin, which was investigated by the Pennsylvania State Police using, among other things, telephone wiretaps.  Id. at *2.  Affidavits provided by the government in Santos-Cruz indicated that a total of 3,110 Spanish-language telephone calls (totaling 81 hours in length) were intercepted, with 244 of the 3,110 intercepted calls identified as pertinent to drug activity and an additional 338 calls identified as pertinent to financial activity or counter-surveillance (totaling 582 pertinent calls).  Id. at *2-3.

Mr. Santos-Cruz filed a pretrial motion seeking to have the district court direct the government to provide English-language transcripts of all 3,110 intercepted calls, including the 2,528 calls which were deemed non-pertinent to any of the charged conduct. See Santos-Cruz, 2000 U.S.Dist. LEXIS 3920, at *3-4.

Judge Van Antwerpen denied Mr. Santos-Cruz's motion and refused to require the government to transcribe all 3,110 intercepted calls.  Id. at *7-9.  Judge Van Antwerpen addressed both Parks and Zavala and held that "there is no requirement under federal law for the government to translate and transcribe all the tape recordings in this case."  Santos-Cruz, 2000 U.S.Dist. LEXIS 3920 at *7 (emphasis in original).

However, Judge Van Antwerpen noted that the government made the audio recordings of all 3,110 recorded calls available to defense counsel and provided the defendants with "transcribed translations of the tapes with respect all pertinent conversations."  Id. at *9 (emphasis added).  In other words, the government in Santos-Cruz voluntarily provided the defendants in that case with precisely what defendants in this case are seeking: English-language transcripts of all pertinent recorded conversations.  Accordingly, I conclude that Santos-Cruz provides persuasive support for the within Motion to Compel Transcripts.

### United States v. Sherifi

Additionally, a relatively-recent case from the Eastern District of North Carolina -- United States v. Sherifi -- provides substantial guidance concerning, and

-27-

support for, the within Motion to Compel Transcripts.  <u>See</u>
2012 U.S.Dist. LEXIS 84150 (E.D.N.C. June 15, 2012)
(Gates, M.J.)("<u>Sherifi I</u>"), aff'd and reconsideration
denied by 2012 U.S.Dist. LEXIS 111300 (E.D.N.C. August 8,
2012)(Britt, S.J.)("<u>Sherifi II</u>").

In the <u>Sherifi</u> case, a dispute arose between the
government and defendants concerning certain audio and
video recordings which were compiled by the government
during its investigation.  Specifically, the defendants and
their counsel sought English-language transcripts of
English-, Arabic-, and Albanian-language audio recordings.
<u>See</u> <u>Sherifi I</u> at *4.

By Order dated May 2, 2012, issued after an
April 26, 2012 status conference, Magistrate Judge Gates
issued an Order requiring the government to produce
English-language transcripts of all pre- and post-arrest
audio and audio-video recordings.  <u>See</u> <u>Sherifi I</u> at *1-2.

Following the April 26, 2012 status conference
and May 2, 2012 Order, the government in <u>Sherifi</u> discovered
that it actually possessed a substantially larger volume of
electronically recorded communications than it was aware of

at the April 26, 2012 status conference,[15] and subsequently

requested that Magistrate Judge Gates reconsider his May 2,

2012 Order with respect to the transcription issue.

Sherifi I at *1-2.

In its request to Magistrate Judge Gates that he

reconsider his May 2, 2012 Order,

> [t]he government claimed it should only be
> required to produce [1] copies of the
> recordings themselves, [2] full translations
> of the foreign language conversations it
> intend[ed] to use at trial, [3] summaries of
> the remaining foreign language
> conversations, and [4] transcripts of the
> English conversations it intend[ed] to use
> at trial.

Sherifi II at *3-4.

By Order dated August 8, 2012, Magistrate Judge

Gates granted, in part, and denied, in part, the

government's motion for reconsideration of his May 2, 2012

Order.  Of particular import for the within Motion to

Compel Transcripts, Magistrate Judge Gates -- relying on

the court's inherent authority to supervise discovery in

criminal cases , Sherifi I at *16-17 -- required the

government to provide the defendants with English-language

---

[15]    In Sherifi, at the April 26, 2012 status conference the
government represented that it possessed approximately 125 hours of
audio and video-with-audio recordings.  Subsequently, at a May 29, 2012
status conference, the government represented that it had already
provided defendants with 98.9 hours of pre-arrest recordings and 88.17
hours of post-arrest recordings, and that it had identified an
additional 300-plus hours of pre-arrest recordings which the government
thought might contain relevant material.  See Sherifi I at *2-4.

transcripts of all pre-arrest English-, Arabic-, and
Albanian-language recordings on a rolling basis, with all
transcription to be completed two months prior to the trial
date.  Sherifi I at *19-22; see Sherifi II at *4-5.

The government appealed Magistrate Judge Gates'
June 15, 2012 Order concerning its prior motion for
reconsideration.  Specifically, the government sought to
have Senior United States District Judge W. Earl Britt set
aside, as contrary to law, the portion of Magistrate Judge
Gates' June 15, 2012 Order directing the government to
provide English-language transcripts to the defendants.
Sherifi II at *5.

Senior Judge Britt concluded that Magistrate
Judge Gates' June 15, 2012 Order was not contrary to law
and, accordingly, affirmed the magistrate judge's June 15,
2012 Order and denied the government's motion to set that
Order aside.  Sherifi II at *12-13.

In affirming the June 15, 2012 Order, Senior
Judge Britt noted Magistrate Judge Gates' thoughtfully-
reached conclusions that (1) defense counsel needed
English-language transcripts to effectively and efficiently
represent the defendants, (2) preparation of transcripts by
the government would not be unduly burdensome, and (3) the
government is better able to manage the administrative

tasks associated with having the transcripts prepared.
Sherifi II at *8.

Moreover, Senior Judge Britt approved of
Magistrate Judge Gates' express recognition that the
additional costs imposed by the June 15, 2012 Order upon
the government (to the extent it would be producing
transcripts it did not intend to use a trial and would not
otherwise be required to provide to the defendants) could
be adequately addressed by providing the government with an
opportunity to seek partial payment from the defendants
(through Criminal Justice Act funds) of the "reasonable
costs [the government] incurs" in producing transcripts
that the government did not intend to use a trial and would
not otherwise be required to provide to the defendants.
See Sherifi II at *8.

### Analysis

These factors, which weighed in favor of
requiring translation and transcription by the government
in the Sherifi case, weigh similarly in favor of granting
the within Motion to Compel Transcripts.  I will address
those factors in turn.

First, counsel for defendant Santiago, and
counsel for his co-defendants in the within matter (each of
whom is court-appointed and will be compensated pursuant to

the Criminal Justice Act), need English-language transcripts to enable them to effectively and efficiently represent their respective clients here.  Indeed, counsel for defendant Santiago represented to the court during the March 8, 2012 hearing that court-appointed counsel for all but one defendant are "unlearned" in the Spanish language.[16]

Without English-language translations of the pertinent communications intercepted by the government during its investigation, defense counsel's ability to (1) assess the potential evidence against their respective clients, (2) to evaluate whether, and which, pretrial motions should be filed, and (3) to meaningfully prepare for trial or to advise their respective clients concerning possible non-trial resolution of the charges will be significantly reduced.  The need for English-language transcripts of all pertinent calls in this case is heightened because these defendants are charged together as co-conspirators.  Accordingly, intercepted conversations will be relevant to each defendant whether or not he was a party to that particular intercepted communication.  See Sherifi I at *11-12.

---

[16]　　　During the March 8, 2013 hearing, Robert E. Goldman, Esquire, counsel for defendant Santiago, alluded to the familiarity of Carlos A. Martir, Esquire, counsel for defendant Oswaldo Gonzalez, with the Spanish language.  However, Attorney Goldman but did not inform the court of Attorney Martir's level of proficiency.

Moreover, although government counsel represented to the court during the March 8, 2013 hearing that the government would be unlikely to seek to use transcripts of any more than 200 intercepted calls at trial, government counsel declined (understandably) to limit the government's ability to rely on the contents of additional pertinent calls at the trial in this case, or in connection with any future sentencing proceedings involving any of these defendants.

Accordingly, significant potential exists for future reliance by the government upon the contents (in some form or another) of many, if not all, of the pertinent intercepted communications gathered during the government investigation preceding this case.

If prior to trial, the government provides defendants and their respective counsel with the English-language transcripts of all pertinent intercepted communications which may be used against defendants in this case, defendants will be able to meaningfully respond to the government's charges and consider appropriate pre-trial motions and trial strategy (or non-trial disposition of the charges). Moreover, providing transcripts of all pertinent intercepted communications during pretrial discovery in

this complex case will significantly reduce or eliminate the need for future delays to accommodate transcription.

Concerning the second and third factors highlighted in the Sherifi case -- respectively, whether preparation of transcripts would create an undue burden for the government, and whether the government is better able to manage the administrative tasks related to production of the requested transcripts -- both of those factors weigh in favor of granting the within Motion to Compel Transcripts.

Regarding the second and third factors, neither defendants, nor the government, provided the court either with the estimated cost of production of English-language transcripts of all pertinent calls, or a proposed timetable for accompanying that clearly-substantial undertaking.

Nonetheless, during the March 8, 2013 hearing, government counsel indicated that it would take "not less than six months", and possibly longer, for government linguists to generate certified transcripts of the 1,329 intercepted calls deemed pertinent by the government.

During the March 8, 2013 hearing, defendant Santiago's counsel (who is himself a former federal prosecutor) argued that the government would not be unduly burdened if it were required to provide English-language transcripts of the 1,329 pertinent communications.  He

noted that in addition to having demonstrated access to government linguists, the government (be it the United States Attorney's Office for the Eastern District of Pennsylvania, or any of multiple federal law enforcement agencies) has, or very likely has, contractual arrangements in place with firms for the provision of supplemental linguistic services. However, counsel did not offer express evidence of such contracts, or the rates charged under such contracts, during the March 8, 2013 hearing.

Government counsel did not affirmatively dispute that assertion by Attorney Goldman. Therefore, I conclude that it is reasonable to infer that the government will be able obtain English-language transcripts of the 1,329 pertinent intercepted calls at a lower cost than one, or all, defense counsel could command, on relatively short notice, from a private linguistic service provider.

Also as determined by the Court in <u>Sherifi</u>, I conclude that the initial financial burden created by requiring the government to produce English-language transcripts may be mitigated by providing the government an opportunity to seek partial payment from defendants for the reasonable costs the government incurs in production of transcripts which it does not use at trial or in senten-

cing.  <u>See</u> <u>Sherifi II</u> at *8.  Accordingly, I provide the
government with that opportunity.[17]

At the March 8, 2013 hearing, government counsel
did not argue (and could not have argued plausibly) that
defendants' court-appointed attorneys are, individually or
jointly, better equipped than the government to handle the
administrative challenges associated with generating
English-language transcripts of 1,329 intercepted Spanish-
language communications.  Accordingly, I find that third
factor to weigh in favor of granting the within Motion to
Compel Transcripts.

CONCLUSION

For the reasons expressed above, I grant, in
part, and deny, in part, the Motion to Compel Transcripts
filed by defendant Melvin Santiago and joined by his co-
defendants.

Specifically, the Motion is granted to the extent
that it seeks an Order requiring the government to produce
English-language transcripts of all 1,329 electronically-
recorded intercepted communications that the government has

---

[17]         It is the sense of this Opinion that the government shall
have the opportunity to seek reimbursement for reasonable expenses
incurred in the production of English-language transcripts of
intercepted communications which the government does not rely on, or
refer to, at trial or sentencing of any defendant in this case.

designated, and represented to the court to be, pertinent to the charges in this case.

However, I deny the Motion to the extent that it seeks to require the government to bear the full cost of providing English-language transcripts which the government does not introduce into evidence, or otherwise rely upon, at trial, or during sentencing proceedings if any defendant is convicted.

Having determined that the government will be required to produce English-language transcripts of the 1,329 pertinent recorded conversations, the accompanying Order schedules a second status conference to establish pretrial deadlines and an appropriate trial date in this case.